## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ALIU ALABI,

       Plaintiff,

v.                                                                No. 1:18-cv-00931-RB-LF

SONNY PERDUE, SECRETARY,
UNITED STATES DEPARTMENT
OF AGRICULTURE,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Pro se Plaintiff Aliu Alabi worked in the Human Resources Department of the United States Department of Agriculture (USDA or agency) in Albuquerque, New Mexico. During his tenure, he received mostly positive performance reviews, but starting in 2013, his relationship with his supervisors grew contentious. Alabi believed that certain employment regulations were being ignored, and he passed these concerns up the chain of command. At a conference call to discuss these matters, Alabi got into an argument with a supervisor and was reprimanded. Alabi contends that this action was rooted in discrimination because of his race and his national origin. He further believes that he experienced workplace harassment during this same time period. After pursuing administrative remedies for some of his claims, Alabi filed a Complaint in district court against Defendant Secretary Sonny Perdue of the USDA.

Before the Court now are Alabi's Motion for Summary Judgment on his discrimination claims (Doc. 87) and the Defendant's Cross-Motion for Summary Judgment (Doc. 101). After considering the briefs and record, the Court will grant Defendant's Motion because (i) Alabi failed

to exhaust his administrative remedies for many of his claims and (ii) Defendant provided sufficient evidence to show that no factual issues remain for trial.

## I.     Background

Plaintiff Alabi is originally from Nigeria. (Doc. 8 (Am. Compl.) ¶ 9.) He began working for the USDA in April 2008. (*Id.*) He claims a physical disability, arthritis, and sought accommodation. (Doc. 87 at 34.) In August 2011, Alabi was assigned to the employment policy unit; the branch supervisor at the time was Diana Ganley. (*Id.* at 2.) There, Alabi's job entailed reviewing employment matters and contracts within the human resources department. (Am. Compl. ¶ 22.) During his time on that team, Alabi received mostly positive performance reviews. (Doc. 6-1 at 20.)

In May 2013, Alabi informed a supervisor, Nate Anderson, that a case he was reviewing did not meet certain regulatory requirements. (*Id.* at 8.) Alabi claimed that a white employee, Kurt Krueger, was receiving preferential treatment due to his race because Krueger sought an extension after his term of appointment ended, despite not meeting the regulatory requirements.[1] (*Id.*) Alabi brought this to the attention of Mary Beth Lepore, the HR Director, in an email. (*Id.*) On May 29, 2013, Alabi participated in a conference call with Anderson regarding the issue. (*Id.* at 3.) During the call, Anderson disagreed with Alabi's assessment, and Alabi allegedly acted in an unprofessional manner. (*Id.*) Afterward, Anderson and Ganley discussed the conference call via email, and she informed Anderson that she was planning to address the matter with Alabi. (*Id.* at 15.) Ganley desired to issue a Letter of Warning (LOW); though Anderson did not believe that it was necessary. (*Id.* at 16.) Ganley wrote to Alabi, asking for an explanation of the problem and

---

[1] According to the Amended Complaint, Krueger's employment was ultimately terminated. (Am. Compl. ¶ 37.)

requesting that he not reach out directly to the HR director without first consulting his team and direct supervisor. (*Id.* at 12.)

On July 19, 2013, Alabi received a LOW for his behavior from Deputy Director of HR, Rhonda Flores. (*Id.* at 3.) The letter stated that in addition to the Anderson call, Flores had "verbally warned" Alabi about his "demeanor" and conduct as it related to their "customers." (*Id.*) The letter also described how to file a formal grievance to appeal the LOW. (*Id.*) On July 30, 2013, Alabi filed a formal grievance, and the LOW was rescinded later that day. (Doc. 96-7 ¶ 7.)

Throughout this same time period, Alabi also perceived several instances of discrimination in the workplace that he later documented in an Equal Employment Opportunity (EEO) complaint that he filed on November 26, 2013. (Doc. 96-1 ¶ 3.) His EEO complaint included the following allegations to be investigated:

1. [O]n July 19, 2013 his supervisor issued a Letter of Warning to him; and
2. on various dates, he was subject to additional incident [sic] of harassment, such as:
    a. on an unspecified date in 2012, while his car was parked in an agency parking lot, an unidentified person broke his car antenna;
    b. on June 28, 2013, an unidentified person removed his unattended mobile phone, which was charging on his desk, took pictures of "Apes of different kinds," and then returned the phone to his desk;
    c. on June 2, 2013, and other unspecified dates, while his car was parked in an agency parking lot, an unidentified person or persons affixed chewing gum to his car door handle;
    d. on July 2, 2013, a co-worker ridiculed him in the break [room] by pointing at him in response to another co-worker's observation that she "smelled something"; and
    e. on August 27, 2013, he discovered that his locked lunch bag had been tampered with.

(Doc. 96-5 at 3.) The claims were investigated between March 12, 2014, and May 20, 2014, and Alabi never sought to amend the complaint. (Doc. 96-1 ¶ 5.) On January 13, 2017, Administrative Judge David Kelly issued a Final Order in favor of the USDA. (*Id.* ¶ 10.) Alabi appealed the Order

to the EEOC. (*Id. ¶* 12.) On August 23, 2018, the EEOC's Office of Federal Operations affirmed the USDA decision. (*Id.* ¶ 14.)

Alabi then filed his Complaint in district court on October 4, 2018 (Doc. 1 (Compl.)) and an amendment thereto on October 22, 2018 (Am. Compl.). He filed this Motion for Summary Judgment on December 30, 2019. (Doc. 87.) Alabi's claims include: retaliation based on the LOW (Count I); hostile work environment (Count II); retaliation based on reduced job responsibilities (Count III); retaliation based on a low performance rating (Count IV); retaliation based on a job transfer (Count V); retaliation based on decreased promotional opportunities (Count VI); discrimination based on race (Count VII); discrimination based on a disability (Count VIII); and discrimination based on national origin (Count IX). On March 2, 2020, Defendant filed a Cross-Motion for Summary Judgment. (Doc. 101.)

## II.    Legal Standard

The Court may grant a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Genuine issues of fact are those that "a rational trier of fact could resolve . . . either way," and material facts are "essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted). The parties must provide support, and the Court will make all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial responsibility of showing "that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party does so, "the burden shifts to the nonmoving party to set forth specific facts showing that

there is a genuine triable issue." *Johnson v. City of Roswell*, 752 F. App'x 646, 649 (10th Cir.

2018) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir.

2013)). Cross-motions for summary judgment are treated separately if possible, *Buell Cabinet Co.,*

*Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979), and courts will deny the motions if disputed

material facts remain, *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316,

1319 (10th Cir. 1997).

## III.   Discussion

### a.   Alabi cannot make out his first retaliation claim (Count I) because Defendant provides sufficient support showing that the Letter of Warning did not constitute an adverse action under Title VII.

Title VII prohibits an employer from discriminating against any employee "because he has

opposed any practice made an unlawful employment practice by this [title] . . . ." 42 U.S.C. §

2000e-3(a). To prove retaliation, a plaintiff must show: (1) "he engaged in protected opposition to

discrimination"; (2) "a reasonable employee would have found the challenged action materially

adverse"; and (3) the activity caused the adverse action. *Proctor v. United Parcel Serv.*, 502 F.3d

1200, 1208 (10th Cir. 2007) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d

1193, 1202 (10th Cir. 2006)). To prove the causal element, the plaintiff can provide evidence of

motive and temporal proximity. *Id.*; *see also Walton v. N.M. State Land Office*, 113 F. Supp. 3d

1178, 1190 (D.N.M. 2015). If the employee establishes the *prima facie* case, then the burden shifts

to the employer to offer a nondiscriminatory reason for the adverse action. *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802 (1973); *Trujillo v. Univ. of Colorado Health Scis. Ctr.*, 157

F.3d 1211, 1215 (10th Cir. 1998). If that burden is met, then summary judgment is warranted

unless the employee can raise a genuine issue of material fact showing that the employer's

explanation is pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–49 (2000); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).

Alabi argues that the LOW he received after a heated conference call constituted retaliation for speaking out against discrimination in the department. (Doc. 27 at 11.) The Court, however, disagrees with his assessment. The first element of a retaliation claim is met when the plaintiff engages in protected activity or speech. The protected activity contemplated in Title VII includes, in relevant part, complaints to supervisors about discriminatory activity. *Walton*, 113 F. Supp. 3d at 1197. Here, Alabi claims that the attempted extension of Krueger's appointment was motivated by race, and his complaints to supervisors constitute protected activity. (Doc. 87 at 9–10.) The Plaintiff must maintain the subjective belief that he is opposing discrimination, but also this belief must be objectively reasonable in light of the facts presented. *Espinoza v. Dep't of Corr.*, 509 F. App'x 724, 729 (10th Cir. 2013). Alabi certainly meets the subjective element, but it remains unclear to the Court whether he surpasses the objective hurdle. Defendant focused on the latter two elements and did not brief this issue in detail. Accordingly, the Court will assume without deciding that Alabi met the first element. *See Schneider*, 717 F.3d at 768.

The second element requires a materially adverse action taken against the employee, amounting to "a significant change in the plaintiff's employment status . . . ." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (quoting *Haynes v. Level 3 Commc'ns., LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006)). Examples include an increased "likelihood that the plaintiff will be terminated," actions that "undermine[] the plaintiff's current position," or those that limit "the plaintiff's future employment opportunities." *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1137 (10th Cir. 2005) (citing *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998)). Alabi's argument that the LOW constitutes an adverse action under Title VII, however,

does not hold water. Deputy Director Rhonda Flores issued the LOW in response to a meeting Alabi attended with Anderson. (Doc. 6-1 at 3.) The letter references a disagreement the two individuals had about Alabi's "assessment" of the Krueger case and states that "[n]o matter how difficult these conversations become, we must all remain civil." (*Id.*) The letter continues to discuss other occasions where Flores warned Alabi about his demeanor and treatment of customers. (*Id.*) The LOW refers to this action as a "formal written warning" that will remain in a "confidential, non-permanent file for one (1) year." (*Id.*)

Defendant argues in his Cross-Motion that Alabi cannot make out the claim because there is no adverse action.[2] (Doc. 96 at 18.) An adverse action cannot be a trivial employment action, such as ignoring an employee at the workplace or imposing a mere verbal warning. *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018). The Tenth Circuit held in *Schuler v. City of Boulder* that reduction of duties, a written reprimand, and the assigning of low performance ratings collectively constituted an adverse action. *See* 189 F.3d 1304, 1306–07 (10th Cir. 1999). But in *Anderson v. Clovis Municipal Schools*, the court held that the issuance of a formal reprimand and an "employee growth plan" did not amount to an adverse action. 265 F. App'x 699, 704 (10th Cir. 2008). Alabi's LOW, however, carries even less serious consequences than the actions taken in *Anderson*. The LOW merely warned Alabi about behavioral issues and how to improve his performance. Moreover, the LOW was rescinded after Alabi followed the grievance plan. (Doc. 96-7 ¶ 6.) An adverse action can only occur when it "alters the employee's compensation, terms, conditions, or privileges of employment, or adversely affects his . . . status as an employee." *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000) (quoting *Sanchez v. Denver Pub.*

---

[2] Defendant's supporting evidence in his Cross-Motion for Summary Judgment (Doc. 101) is largely derived from exhibits attached to his Response (Doc. 96) to Alabi's Motion for Summary Judgment.

*Sch.*, 164 F.3d 527, 533 (10th Cir. 1998) (internal quotation marks and brackets omitted). And here, the LOW resulted in none of these serious alterations to Alabi's employment.

Finally, even if Alabi could successfully argue that the LOW constituted an adverse employment action, there is nothing in the record suggesting that the LOW was issued in retaliation for his speaking out against discrimination. Rather, it had a nondiscriminatory purpose and was aimed at improving Alabi's workplace performance. To make a causal connection, plaintiff must offer facts demonstrating the motivations behind the adverse action. *Proctor*, 502 F.3d at 1208; *see also Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (showing the temporal component of this element, that four months is too large a gap in time to make a causal connection). Thus, Alabi would need to demonstrate how the LOW was issued specifically in response to his complaints about discrimination in the department. But Alabi provides only conclusory allegations with no support in the record. (Doc. 6-1 at 9.) In the Cross-Motion, however, Defendant points to evidence showing that the LOW was issued for nondiscriminatory reasons. (Docs. 96-8; 96-9; 96-10; 6-1 at 15.) Flores issued the LOW because Alabi's workplace demeanor was brought into question. (Doc. 96-8 at 1.) Thus, the basis for the LOW was an internal work-performance issue, with no seeming discriminatory motivation. Alabi could argue that the agency's nondiscriminatory action was pretextual, but again he provides no evidence beyond conclusory accusations.

After considering the record, Defendant has shown that (i) the LOW does not constitute an adverse action under Title VII and (ii) that Flores issued the LOW for nondiscriminatory reasons. It is clear that no factual disputes remain, so the Court will grant Defendant's Motion for Summary Judgment as to Count I.

**b.  Alabi cannot succeed on Counts III–IX because Defendant has demonstrated that these claims have not been administratively exhausted.**

Alabi next moves the Court to grant summary judgment on several claims related to both Title VII and the Americans with Disabilities Act (ADA) (Counts III–IX) (Doc. 87 at 12–21.) Defendant filed a Cross-Motion arguing that these claims were not administratively exhausted (Doc. 101 at 22.) Title VII requires that the employee file timely charges with the EEO prior to filing suit in federal court. *See Hansen v. SkyWest Airlines*, 844 F.3d 914, 922 (10th Cir. 2016) (citing 42 U.S.C. § 2000e–5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)). Specifically, the employee must first contact an EEO counselor within 45 days of the issue. 29 C.F.R. § 1614.105(a)(1). If the counselor cannot resolve the issue, then the employee's agency is contacted. *Id.* § 1614.106. Only after the agency investigates and potentially appeals to the EEOC may an individual file the case in federal court. *Id.* § 1614.108. The purposes of administrative exhaustion include providing "notice of the alleged violation to the charged party" and giving "the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994) (citations omitted), *abrogated on other grounds by Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003).

Alabi brings multiple claims in his Amended Complaint, including reduced job responsibilities (Count III); a low performance rating (Count IV); reassignment to a different division as a form of retaliation (Count V); reduced prospects for promotion (Count VI); race discrimination (Count VII); discrimination based on his disability (Count VIII); and national origin discrimination (Count IX). (*See* Doc. 87.) Yet the only claims that Alabi pursued in his EEO complaint included: (1) Flores issuing the LOW; (2a) unidentified individuals breaking his car antenna; (2b) unidentified individuals taking pictures of apes and leaving them on Alabi's phone;

(2c) unidentified individuals placing chewing gum on his car door; (2d) a coworker ridiculing him for how he smelled; and (2e) unidentified individuals tampering with his lunch. (*See* Doc. 96-5 at 3.) At no point throughout this process did Alabi amend his EEO complaint to include the additional claims in Counts III–IX. Alabi now argues that while these claims were not specifically exhausted, they are related to the five claims listed above that the administrative judge heard.

The Tenth Circuit, however, holds that each discrete employment action requires administrative exhaustion. *Martinez*, 347 F.3d at 1210; *see also Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1226–27 (10th Cir. 2014). Examples of such discrete actions include "termination, failure to promote, denial of transfer, or refusal to hire . . . . Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114. Here, Alabi lists several new "discrete employment actions" that were not described in his EEO complaint; thus, they have not met the administrative exhaustion requirement.[3]

### i.  Additional Retaliation Claims (Counts III–VI)

Counts III through VI are styled as retaliation claims; however, none of the allegations were offered as part of Alabi's EEO complaint. Count III alleges a reduction in job responsibilities as a result of Alabi speaking out against discrimination. (Doc. 87 at 12.) Specifically, Alabi states that Ganley reduced his responsibilities as a form of retaliation in connection with the LOW that was mentioned in the EEO complaint. (*Id.*) Yet two obvious problems with this claim exist. First, *Morgan* requires administrative exhaustion of each discrete act of discrimination in the workplace. *See* 536 U.S. at 114. Under that standard, the issuance of the LOW and the reduction of job

---

[3] In *Lincoln v. BNSF Ry. Co.*, the Tenth Circuit held that administrative exhaustion was not jurisdictional, but rather, defendants had to raise it as an affirmative defense. *See* 900 F.3d 1166 (10th Cir. 2018). Here, Defendant raised administrative exhaustion as an affirmative defense both in his Answer (Doc. 20 (Answer) at 23) and at the summary judgment stage (Doc. 96 at 14).

responsibilities would constitute distinct acts. The Court previously stated that the LOW was not an adverse action for retaliation purposes because it did not fundamentally alter Alabi's employment status, whereas reduced job responsibilities might constitute an adverse action. This difference of degree demonstrates how these two actions are discrete, with both requiring administrative exhaustion. Second, even if this claim were considered together with the LOW to meet the requirements of administrative exhaustion, Alabi's only supporting evidence of retaliation is an email from Ganley informing him that his "duties in regards to all [HR] packages [have] changed" (Doc. 6-1 at 14), and another email exchange where Ganley apologizes to Anderson and claims that she will speak with Alabi about his behavior (*id.* at 15). From this limited record, Alabi cannot claim that his altered job responsibilities are tied to his speaking out against discrimination in the workplace.

The other three claims follow the same pattern and are unrelated to the EEO complaint. Count IV relates to allegations that Ganley gave Alabi a low rating based on discrimination. (Doc. 87 at 12.) This claim does not connect to the LOW in any way, and none of the other five claims in Alabi's EEO complaint have anything to do with receiving a low rating. (Doc. 96-5 at 3.) Thus, the Court also views this as a discrete act that requires administrative exhaustion because a poor rating could alter an individual's employment status. Count V relates to Alabi's reassignment that he attributes to retaliation (Doc. 87 at 13), and Count VI relates to reduced promotion opportunities (*id.* at 15). These claims do not appear in Alabi's EEO complaint either and constitute discrete acts that must be exhausted. (Doc. 96 at 14–18.) As a result, the Court will grant Defendant's Motion for Summary Judgment regarding Counts III–VI.

**ii.  Discrimination Claims (Counts VII and IX)**

Next, Alabi moves the Court to grant summary judgment on Counts VII and IX, alleging discrimination on the basis of race and national origin (Doc. 87 at 18–21), while Defendant's Cross-Motion again argues failure to exhaust administrative remedies (Doc. 101 at 25). Specifically, Alabi claims that his white colleagues were treated differently, and that because he exposed problems within the agency, his supervisors took action against him. (Doc. 87 at 18–19.) This claim is similar to the other retaliation claims despite its categorization as a discrimination claim. Given that Alabi proceeds pro se, the Court will view Counts VII and IX through a discrimination lens. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Even with this generous interpretation, however, both race and national origin claims must go through the same administrative procedure as the retaliation claims described above. Accordingly, Alabi failed to exhaust his administrative remedies. None of the claims brought forth in the Amended Complaint—that certain individuals were treated better because they were white—were discussed in the EEO complaint. (Doc. 96-5.) And each discrete act of discrimination must be brought through administrative procedures before a federal court can hear the claim. *Morgan*, 536 U.S. at 114.

Even if Alabi could connect these actions to the allegations in his EEO complaint, he still has not provided sufficient evidence to succeed on his summary judgment claim. Title VII states that employers are not allowed to "to limit, segregate, or classify [their] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The employee must first establish the *prima facie* case of unlawful discrimination or retaliation. A plaintiff generally must

show (1) that he is a member of a protected class based on his national origin or gender, (2) that he suffered an adverse employment action, and (3) that similarly situated employees were treated differently. *See Trujillo*, 157 F.3d at 1215; *see also Grossete v. City of Albuquerque Open Space Police Dep't*, No. CV 06-634 MCA/DJS, 2007 WL 9709788, at *5 (D.N.M. Sept. 28, 2007) (applying this framework). And the same burden-shifting framework from retaliation cases applies to discrimination cases. *Trujillo*, 157 F.3d at 1215.

Here, Alabi can make out the first and second elements but not the third.[4] Alabi contends that he was "removed suspiciously from [the policy team] and replaced . . . because of [his] protected activities." (Doc. 87 at 20.) He further contends that his previous supervisors gave him positive ratings and that he has remained at the same government level since these events transpired, attributing this stagnation to discrimination. (*Id.*) The Court considers these incidents to be adverse actions. *See Morgan*, 536 U.S. at 114. Still, Alabi provides no evidence that similarly-situated white coworkers were treated differently, aside from his own conclusory email comments. (Doc. 6-1 at 8–10.) Moreover, the agency's LOW offers evidence that the rationale behind any actions related to Alabi's performance and workplace demeanor, and Alabi has offered no evidence that these decisions were pretextual. (Docs. 96-8; 6-1 at 15.)

In addition, Alabi discusses some of the harassing behavior that he experienced within the department. He states that certain coworkers "abused, undermined, and degraded" Alabi in a meeting. (Doc. 87 at 38–39.) He also addresses the pictures that were placed in his phone. (Doc. 45-2 at 21.) These incidents, however, do not fit into the *prima facie* case for discrimination based on race or national origin because they are not tied to an adverse employment action, but rather align with the hostile work environment category. Thus, the Court will discuss them within the

---

[4] Alabi also discusses some of the harassment he experienced in Count VII, but the Court will address these claims fully in its discussion on Count II.

context of Count II. In sum, the Court will grant Defendant's Motion for Summary Judgment as to Counts VII and IX because Alabi failed to exhaust his administrative remedies.

### i.    Disability Claim (Count VIII)

Alabi also moves the court to grant summary judgment on his disability discrimination claim (Doc. 87 at 20–21), while Defendant filed a Cross-Motion for Summary Judgment refuting the allegations (Doc. 101 at 15). Alabi does not mention the ADA, but because he is proceeding pro se, the Court will liberally organize and interpret his claims. *See Kay*, 500 F.3d at 1218. Like Title VII claims, however, "a plaintiff must exhaust her claims before the EEOC as a prerequisite to federal court jurisdiction over her ADA claims." *MacKenzie*, 414 F.3d at 1274 (citations omitted). Defendant is again correct that Alabi failed to exhaust his ADA claim. His original EEO complaint makes no mention of a disability. (Doc. 96-5.) While some of the facts related to this claim may overlap with those of his Title VII claims, Alabi's EEO complaint exclusively addresses claims related to race and national origin. (*Id.*) Courts still require that discrete claims undergo administrative exhaustion, and Alabi has not shown that he made a disability claim in  the EEO complaint.

Even if Alabi had shepherded his disability claims through the proper procedural channels, he has not provided sufficient evidence to survive summary judgment. The Tenth Circuit has held that disability claims require that the individual: "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 995 (10th Cir. 2019) (quoting *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037–38 (10th Cir. 2011)). Plaintiff can prove discrimination directly through a facially discriminatory policy, *Jones v. United Parcel*

*Serv., Inc.*, 502 F.3d 1176, 1188 n.6 (10th Cir. 2007), or oral and written statements that show discriminatory motivation, *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). Circumstantial evidence may also be used under the *McDonnell Douglas* burden-shifting test. *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010).

Assuming for purposes of this opinion that Alabi meets the first two elements, he fails to provide sufficient evidence to connect the perceived discrimination to his disability. He claims that he was removed from his team because another individual who was less qualified and not disabled took his role. (Doc. 67 at 56.) Yet Alabi only cites an email discussion describing his change of position (Doc. 6-1 at 26) and an email discussion where Alabi asks about his new role (Doc. 45-2 at 44). He cites no facially discriminatory agency policy and offers no evidence to suggest that a discriminatory motivation was behind his departure from the policy team. Alabi also provides no indirect evidence to suggest that his disability was a motivating factor. Regardless, Alabi failed to administratively exhaust his disability discrimination claim, so the Court does not need to reach the merits. Thus the Court will grant Defendant's Motion with respect to Count VIII.

###### c. Alabi cannot make out the hostile work environment claim (Count II) because Defendant shows that the claims are not factually supported.

Lastly, Alabi moves the Court to grant summary judgment on his hostile work environment claim (Doc. 87 at 22), and Defendant filed a Cross-Motion refuting the claim (Doc. 101 at 14). The Supreme Court has considered the administrative procedural posture of hostile work environment claims separately from other Title VII claims (retaliation and discrimination). *Morgan*, 536 U.S. at 110. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Thus, the same strict timing and exhaustion requirements do not apply. Rather, the Court's role is to "determine whether the acts about which an employee complains are

part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 120. A plaintiff's claim might be "limited by the scope of the administrative investigation[,]" *MacKenzie*, 414 F.3d at 1274 (citations omitted), but courts will "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim," *Jones*, 502 F.3d at 1186 (citations omitted). The Supreme Court held "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105; *see also Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005) ("The entire range of related acts constitutes the hostile work environment . . . ."); *Hyman v. N.M. State Univ.*, No. CIV 18-1103 JB/KRS, 2020 WL 1514801, at *17 (D.N.M. Mar. 30, 2020) (applying the standard).

Here, Defendant primarily reiterates his argument that Count II includes acts that were not administratively exhausted. (Doc. 96 at 23.) While Defendant is correct that Alabi did not include the specific facts of each allegation in his EEO complaint, courts have held that a hostile work environment action before the EEOC does not need to include every act brought before the district court. Alabi filed the EEO Complaint in November 2013, and some of the actions listed in Count II occurred before the time described in the administrative complaint. Nevertheless, given the ongoing nature of workplace harassment, the Court will look beyond the four corners of the EEO complaint at the claims not administratively exhausted.

To make out a hostile work environment claim and survive summary judgment, the plaintiff must show that the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment, and that the victim was targeted for harassment because of . . . race or national origin." *Al-Kazaz v. Unitherm Food Sys., Inc.,* 594 F. App'x 460, 462 (10th Cir. 2014) (quoting *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012)). Such harassment, however, must be serious and pervasive, as "Title VII does not establish a general civility code[] for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Morris v. City of Colo. Springs*, 666 F.3d 654, 663–64 (10th Cir. 2012) (internal quotation marks and citations omitted).

Despite the inclusion of new allegations in the analysis, the Court finds that most of Alabi's claims do not constitute "serious and pervasive" workplace harassment. First, Alabi argues that a white coworker "harassed" him at his cubicle. (Doc. 87 at 22.) His supporting documentation, however, only includes an email exchange with this coworker, describing nothing more than an acknowledgement of disparate working styles. (Doc. 6-1 at 34.) Further, Alabi and this co-worker appear to resolve the issue via email. (*Id.*) Next, Alabi argues that management refused to process his reassignment. (Doc. 87 at 22.) Yet he only includes an email exchange between agency workers confirming that the reassignment was not processed. (Doc. 6-1 at 21.) Alabi points the Court to no document in the record connecting this reassignment to workplace hostility. The email exchange cited appears to be nothing more than a discussion about troubleshooting a problem with his reassignment. (*Id.*) Alabi later claims that chewing gum left on his car door contributed to a hostile work environment. (Doc. 87 at 23.) Plaintiff included this claim in his EEO complaint, and Judge Kelly found in favor of the agency. The record before the Court includes an email discussion about the incident between Alabi and Ganley, but nothing in that exchange offers details about the incident or suggests that it was somehow based in discrimination. (*See* Doc. 6-1 at 18.) Further,

17

the culprit is unidentified, which makes the motivation behind the act impossible to discern. Similarly, Alabi complained that an unidentified individual tampered with his lunch (Doc. 87 at 23), but he again fails to support this claim with evidence beyond an email complaint sent to his supervisor describing the incident. (Doc. 6-1 at 44.)

Next, Alabi includes several claims that the Court has already discussed, which do not fit the sort of behavior creating workplace hostility. But in construing the claims in a liberal fashion for the pro se Plaintiff, the Court will also consider these claims here. Alabi suggests that an individual misrepresented his conversation with Anderson, which prompted the LOW. (Doc. 87 at 23.) Yet there is no evidence to suggest that another employee lied about Alabi's behavior. Alabi separately argues that he was wrongly issued the LOW. (Doc. 87 at 23.) This too does not fit within the scope of a hostile work environment, and the Court has already found that the agency issued the LOW for nondiscriminatory reasons. Alabi next claims that his job responsibilities were reduced intentionally—motivated by race and national origin. (Doc. 87 at 23.) The email he cites to support its inclusion in Count II, however, merely states that his duties changed, and nothing in the document suggests a nefarious motivation. (Doc. 6-1 at 14.) Alabi also claims that he received poor ratings, but he only cites his fully successful rating. (Doc. 6-1 at 20.) With nothing more to go on, the Court sees no connection to workplace hostility.

Only two of the incidents Alabi lists have any potential connection to race or national origin discrimination. First, he claims in an email complaint to Ganley that an unidentified woman in his unit had not returned his emails about internal questions about their workflow. (Doc. 6-1 at 21.) While this is only a personal, work-related dispute, Alabi also stated in that email that she said that she could not "take instruction from [a] black-man." (Doc. 6-1 at 21.) And second, he discusses the alleged photographs of apes that were taken on his phone without his knowledge or permission.

(*Id.* at 36.) The problem for Alabi is that while these two incidents implicate racial or national origin discrimination, they are insufficient to constitute a *pervasive* hostile work environment under Title VII. *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005).

Even if Alabi had factually supported these claims, the Court is left with only two incidents, which alone cannot constitute a hostile work environment. *See Chavez*, 397 F.3d at 832. The Tenth Circuit stated in *Chavez* that "two comments fall far short of the 'steady barrage' required for a hostile environment claim" under Title VII, *id.*, and in *Bolden v. PRC Inc.* that "plaintiff must show more than a few isolated incidents of racial enmity," 43 F.3d 545, 551 (10th Cir. 1994) (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987)) (internal quotation marks omitted). Here, only two of Alabi's eleven claims have any connection to race or national origin. The Court cannot infer other instances of discrimination based on these two incidents alone. In *Arthur v. Bloomfield School District*, the court assessed whether a derogatory workplace comment about President Barack Obama in front of the plaintiff constituted workplace hostility. 157 F. Supp. 3d 1055, 1061 (D.N.M. 2015). The court concluded that "the facts reveal at most two instances in which anyone employed by the Governmental Defendants engaged in racially-disparaging behavior[,]" which is not enough to succeed on a Title VII claim. *Id.*; *see also Truman v. Brannan Sand & Gravel Co.*, No. 10–cv–00801–PAB–KLM, 2011 WL 5865047, at *9 (D. Colo. Nov. 22, 2011) (holding that four incidences of racial slurs did not constitute a hostile work environment). Likewise, Alabi's two claims fall short of the "steady barrage" of harassment that the Tenth Circuit requires for hostile work environment claims. *See Chavez*, 397 F.3d at 832.

At the same time, the Court condemns the alleged actions and is dismayed that such behavior could occur in any workplace. Alabi should not be subjected to such treatment and asks the agency to better monitor and train its employees to foster a healthy, welcoming environment

19

for all workers. But while the Court might denounce such behavior, it has limited authority under Title VII to address workplace violations, and no jury could find that these two factually-unsupported incidents constitute the pervasive harassment contemplated under Title VII. As a result, the Court will grant Defendant's Motion for Summary Judgment.

**THEREFORE**,

**IT IS ORDERED** that Alabi's Motion for Summary Judgment (Doc. 87) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 101) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**